# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1141

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| David E. Wise, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 25, 2009
Filed: December 1, 2009

_____

Before LOKEN, Chief Judge, WOLLMAN and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

David E. Wise appeals the district court's[1] admission of his post-<u>Miranda</u>[2] statements to detectives, the denial of his motion to suppress evidence, and his conviction for conspiracy to manufacture marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. We affirm.

_____

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

[2]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

I.

Because Wise challenges the sufficiency of the evidence, we review the facts in the light most favorable to the jury's verdict. United States v. Whirlwind Soldier, 499 F.3d 862, 866 (8th Cir. 2007), cert. denied, 128 S. Ct. 1286 (2008). On July 13, 2007, Detective Josh Davis, a narcotics detective with the North County Metropolitan Enforcement Group, received a tip from a confidential informant regarding a possible marijuana growing operation at 15718 Hill House Road, Chesterfield, Missouri—a residence owned by Brian M. Sievers. The informant told Detective Davis that Sievers was growing marijuana in his basement with Wise.

On July 16, 2007, Detectives Davis, Jeffrey Seerey, and John Cochran went to 15718 Hill House Road and performed a "knock and talk."[3] Detectives Davis and Seerey wore police badges around their necks, and all three detectives were dressed in plain clothes. Sievers answered the door and the detectives identified themselves as police officers. The officers explained that they had received information regarding a marijuana growing operation in the basement of his home. Appearing nervous, Sievers responded, "Who ratted me out? That's all I want to know." The detectives read Sievers his Miranda warnings and Sievers then told the detectives that there were more than 100 marijuana plants in the basement of his home. Sievers subsequently signed a written consent form authorizing the search of his house.

During the search of Siever's residence, the detectives discovered 312 marijuana plants, grow lights, a digital scale, and timers in the basement. The detectives also found plastic baggies and two guns in a spare bedroom. The detectives handcuffed Sievers, who agreed to cooperate with the investigation. Sievers informed the detectives that the house was used as a "grow house" for marijuana and that Wise

---

[3]A "knock and talk" is a law enforcement investigatory technique in which officers approach the door of a dwelling seeking voluntary conversation and consent to search. See United States v. Weston, 443 F.3d 661, 667 (8th Cir. 2006).

was in charge of taking care of the plants. Sievers directed officers to Wise's residence—an apartment located at 721 Wiggins Ferry Road, St. Louis, Missouri.

At approximately 2:30 p.m., the detectives arrived at Wise's apartment. Detective Davis and Sievers remained in the car while Detectives Seerey and Cochran moved towards the apartment to conduct a knock and talk. While approaching the apartment, the detectives observed Wise enter the apartment—leaving the door ajar a couple of inches. Detectives Seerey and Cochran knocked on the door of the apartment just as Wise was exiting. The detectives identified themselves as police officers and indicated that they wanted to talk with Wise about the "incident that took place over in Chesterfield." After the detectives asked Wise if he would rather talk inside or outside the apartment, Wise indicated he would prefer to talk inside, and he led the officers into the apartment.

The detectives observed Wise's wife and child in the apartment. Wise stated that he did not want to talk in front of his family and led the officers into a bedroom. When Detective Seerey noticed that Wise appeared nervous, he patted Wise down and felt something in one of the pockets of Wise's pants. Wise told Detective Seerey that it was marijuana, and Wise removed a pouch of marijuana from his pocket and placed it on top of the dresser in the bedroom.

Detective Seerey next explained to Wise that the detectives had uncovered a marijuana growing operation in Chesterfield and that Sievers had indicated to the detectives that Wise was involved in the operation. Wise stated that he did not believe the officers, and Detective Seerey called Detective Davis on his cell phone—requesting Detective Davis to come inside the apartment with Sievers. Upon their arrival, Wise asked Sievers about the situation, and Sievers replied, "They're onto us, they got the whole grow." The detectives immediately read Wise his Miranda warnings, and Wise admitted that he maintained the plants growing in Sievers's basement and that he and Sievers split the profits from the sale of the marijuana. Before departing, Detective

Davis seized the pouch of marijuana and some marijuana seeds located on top of the dresser in the bedroom.

A federal grand jury returned a single-count indictment against Wise for conspiracy to manufacture marijuana. Prior to trial, Wise moved to suppress the seized marijuana evidence from the bedroom as well as the statements and confession that he made to detectives on July 16, 2007. After an evidentiary hearing, the magistrate judge[4] issued a Report and Recommendation ("R&R"), recommending denial of the motion to suppress in its entirety. The district court adopted the R&R and denied the motion to suppress. The district court found that the seizure of the marijuana seeds did not violate the Fourth Amendment because the detectives had lawfully entered Wise's apartment based on Wise's consent, the seeds were properly seized pursuant to the plain view doctrine, and that the pat-down search of Wise—which led to the discovery of the pouch of marijuana—did not violate the Fourth Amendment because the detectives had reasonable suspicion that Wise was involved in criminal activity. Furthermore, the district court found that the detectives had not violated the Fifth Amendment because the detectives had properly administered the Miranda warnings to Wise prior to questioning him, and Wise had waived these rights.

At trial, Sievers testified that in October 2006 he had discovered marijuana in his basement, which he later learned was being grown by Wise. Sievers stated that Wise agreed to split the profits from the sale of the marijuana with Sievers if Sievers allowed Wise to continue growing the marijuana in the basement. Sievers also testified that this operation continued until July 16, 2007—the day the detectives discovered the marijuana plants. Additionally, Christopher Dickey—a former roommate of Sievers—testified that he had seen marijuana plants in Sievers's home and that Wise had shown Dickey the marijuana growing operation. Dickey also testified that he had observed Wise taking care of the marijuana plants.

---

[4]The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri.

A jury convicted Wise of conspiracy to manufacture marijuana, and the district court subsequently sentenced Wise to 60 months imprisonment.

## II.

## A.

Wise first claims that the denial of his motion to suppress and the admission into evidence of his July 16, 2007, statements violated his Fifth Amendment rights. Wise alleges that the detectives subjected him to a "two part interrogation" both by failing to recite his Miranda warnings when they initially entered the apartment, and by only administering the warnings when the detectives knew Wise was about to confess. "We review de novo the legal conclusions underlying the denial of a motion to suppress on Fifth Amendment grounds, while the factual findings are reviewed for clear error." United States v. Binion, 570 F.3d 1034, 1041 (8th Cir. 2009).

Miranda warnings "are required when interrogation is 'initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" United States v. New, 491 F.3d 369, 373 (8th Cir. 2007) (quoting Miranda, 384 U.S. at 444). Therefore, a suspect is entitled to these warnings prior to undergoing a custodial interrogation—"when an officer's interaction with the suspect is 'likely to elicit an incriminating response.'" United States v. Torres-Lona, 491 F.3d 750, 757 (8th Cir. 2007), cert. denied, 128 S. Ct. 927 (2008) (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). If a suspect makes a knowing and voluntary waiver of his Fifth Amendment rights after receiving Miranda warnings, his inculpatory statements are admissible at trial. See Oregon v. Elstad, 470 U.S. 298, 309 (1985). However, if officers question a suspect and deliberately delay reciting the Miranda warnings in order to provoke a confession, any statements made after the warnings are inadmissible. See Torres-Lona, 491 F.3d at

757-58 (<u>citing</u> <u>Missouri v. Seibert</u>, 542 U.S. 600, 622 (2004) (Kennedy, J., concurring)). This technique, referred to as a "two part interrogation," <u>see</u> <u>id.</u> at 757 (<u>citing</u> <u>Siebert</u>, 542 U.S. at 615-16), is unlawful because it is used to "circumvent <u>Miranda</u> requirements," <u>id.</u> However, "[w]here there has been no such calculated effort [to elicit a confession], the admissibility of a post warning statement should continue to be governed by <u>Oregon v. Elstad</u>," <u>id.</u> at 757-58, and is therefore admissible if the suspect knowingly waived his Fifth Amendment rights, <u>see</u> <u>Elstad</u>, 470 U.S. at 309.

Here, there was no two part interrogation because prior to the recitation of the <u>Miranda</u> warnings, officers made no deliberate or calculated effort to elicit a confession from Wise, and Wise made no incriminating statements. The detectives went to Wise's apartment to perform a lawful knock and talk. Wise voluntarily allowed the detectives to enter his home, and Wise subsequently led the detectives to the bedroom—all on his own initiative. Furthermore, the detectives explained to Wise that they were in his apartment because they had discovered marijuana in Siever's basement, and the officers refrained from asking him any questions "likely to elicit an incriminating response" prior to reading him the <u>Miranda</u> warnings. We conclude that the district court did not err in admitting Wise's post-<u>Miranda</u> statements into evidence, because Wise voluntarily made these statements subsequent to a lawful recitation of his <u>Miranda</u> warnings.

B.

Wise next contends that the detectives did not lawfully seize the marijuana seeds discovered on the bedroom dresser under the plain view doctrine, only challenging whether the detectives lawfully entered his apartment. As a general matter, we review the factual findings of the district court's denial of a motion to suppress for

clear error[5] and the legal question of whether the Fourth Amendment was violated de novo. United States v. McMullin, 576 F.3d 810, 814 (8th Cir. 2009).

Under the plain view doctrine, an officer is permitted to seize evidence without a warrant when certain conditions are met. United States v. Armstrong, 554 F.3d 1159, 1162-63 (8th Cir.), cert. denied, 129 S. Ct. 2805 (2009) (The three required conditions are that: "(1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself" (quotations omitted)). The condition at issue here is whether the detectives violated the Fourth Amendment in entering the bedroom in Wise's apartment—the location where the marijuana evidence was discovered. Additionally, "[a]lthough the Fourth Amendment generally prohibits the warrantless entry of a person's home . . . the prohibition does not apply when voluntary consent has been obtained." United States v. Brooks, 2 F.3d 838, 842 (8th Cir. 1993) (quotation omitted).

After reviewing the record, we do not find error, clear or otherwise, in the district court's findings. The record shows that following the knock and talk, Wise told the detectives that he would prefer to talk inside his apartment, and he voluntarily

[5]A party has ten days to file an objection to an R&R. 28 U.S.C. § 636(b)(1). When a party fails to timely object to the R&R, he "waive[s] his right to de novo review by the district court of any portion of the report and recommendation of the magistrate judge as well as his right to appeal from the findings of fact contained therein." United States v. Newton, 259 F.3d 964, 966 (8th Cir. 2001) (quoting Griffini v. Mitchell, 31 F.3d 690, 692 (8th Cir. 1994)). In that situation, this court reviews factual findings for plain error. United States v. Looking, 156 F.3d 803, 809 (8th Cir. 1998) (citations omitted). Here, both parties agree that Wise did not make a timely objection to the R&R and that the plain error standard is appropriate. Regardless, we find that under either standard, the district court did not err in its findings.

consented to the detectives' entrance into the apartment. Once inside, it was Wise's suggestion that the detectives move to the bedroom, and Wise led the detectives there. Because the district court did not err in finding that the detectives were lawfully in the bedroom, we find that application of the plain view doctrine authorized the seizure of the marijuana seeds, and the district court properly denied the motion to suppress.

C.

Finally, Wise claims that the district court erred in denying his motion for judgment of acquittal, alleging that there was insufficient evidence to convict him of conspiracy to manufacture marijuana. We review the denial of a motion for judgment of acquittal de novo, "accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Erdman, 953 F.2d 387, 389 (8th Cir. 1992). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." Id.

To establish a conspiracy to manufacture marijuana, the government must prove beyond a reasonable doubt that:

> (1) two or more persons reached an agreement or came to an understanding to commit against the United States the criminal offense of knowingly and intentionally manufacturing marijuana; (2) defendant individually, voluntarily, and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; (3) at the time defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

United States v. Scott, 64 F.3d 377, 380 (8th Cir. 1995). Here, the evidence is sufficient to support Wise's conviction. First, testimony from Sievers indicated that he and Wise agreed to grow marijuana in Sievers's basement, that Wise was

-8-

responsible for the cultivation of the plants, and that both Sievers and Wise split the profits from the operation. After Sievers told Wise that the police knew about the marijuana conspiracy, Wise agreed to cooperate with the police in the investigation and admitted his role in the marijuana operation—admitting that he voluntarily joined the conspiracy and that he knew the purpose of the conspiracy when he joined. Furthermore, Christopher Dickey testified that he had seen Wise taking care of the marijuana plants in Sievers's home, further connecting Wise to the conspiracy. Although Wise contends that neither Sievers nor Dickey were credible, it was up to the jury to determine the credibility of these witnesses. United States v. McCarthy, 97 F.3d 1562, 1571 (8th Cir. 1996). Reviewing the evidence in the light most favorable to the jury's verdict, we find there was sufficient evidence to support Wise's conviction.

## III.

Accordingly, we affirm the judgment of the district court.

_____