United States Court of Appeals

For the Eighth Circuit

_____

No. 22-1080

_____

United States of America,

*Plaintiff - Appellee,*

v.

Sylvester Cunningham,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: August 5, 2024
Filed: August 16, 2024

_____

Before COLLOTON, Chief Judge, WOLLMAN and STRAS, Circuit Judges.

_____

COLLOTON, Chief Judge.

Sylvester Cunningham appeals convictions for unlawful possession of a firearm as a convicted felon, possession with intent to distribute cocaine, and possession of a firearm in furtherance of a drug trafficking offense. *See* 18 U.S.C. § 922(g)(1); 21 U.S.C. § 841(a)(1); 18 U.S.C. § 924(c)(1)(A). He argues that evidence should have been excluded from trial due to an unlawful search and seizure,

that he had a constitutional right under the Second Amendment to possess a firearm as a convicted felon, and that there was insufficient evidence to support the convictions.

We affirmed the judgment in 2023. *United States v. Cunningham*, 70 F.4th 502 (8th Cir. 2023). The case is now on remand from the Supreme Court for further consideration in light of *United States v. Rahimi*, 144 S. Ct. 1889 (2024). We again conclude that none of Cunningham's contentions has merit, and therefore affirm the judgment of the district court.[1]

I.

Cunningham, a twice-convicted felon serving a federal term of supervised release, was arrested for possessing a firearm and cocaine at a Walmart store in Cedar Rapids in August 2020. At the time of the incident, Cunningham had been convicted of two prior felonies: driving under the influence of alcohol in 2005 in Illinois, and possession of a firearm as a convicted felon in federal court in 2012.

Cunningham arrived at the Walmart in a vehicle, traveled from the vehicle to the entrance in his own wheelchair, and then transferred to a motorized cart owned by Walmart for use while shopping. When Cunningham first transferred from his wheelchair to a motorized cart, the cart did not work. A Walmart employee helped Cunningham move to a second motorized cart, which also did not work, and then to a third motorized cart, which functioned properly. Cunningham's personal wheelchair remained near the front of the store, pushed against a wall.

---

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

Cunningham moved into the store on the motorized cart, but soon returned to the entrance looking for his cellular phone. He seemed to have misplaced the phone when switching motorized carts. When he could not find the phone in or around the carts, Cunningham received permission from the Walmart employee to drive the motorized cart to the parking lot so that he could check for the phone in his vehicle.

While Cunningham returned to his vehicle, the Walmart employee suspected that the phone could have slid under the seat cushion in Cunningham's personal wheelchair. She lifted the seat cushion and did not find a phone, but observed a firearm. She notified a Walmart manager, who approached the wheelchair and also saw the gun.

The first Walmart employee notified police officer Matthes who was outside the store and about to begin a shift working in uniform to provide security. The Walmart employee told Matthes that she needed immediate assistance because someone in the store had left a gun in a wheelchair. The employee explained that she found the gun under the seat cushion while helping a customer look for a lost cell phone. The Walmart manager stayed near the wheelchair, presumably to ensure that no patron in the vestibule would encounter the firearm. When Matthes entered the store, the manager pointed down at the wheelchair.

By then, Cunningham had returned to the store and was seated in a motorized shopping cart near the entrance. When Matthes questioned him about a gun, Cunningham admitted the wheelchair was his, but denied having a weapon or placing a weapon in the wheelchair. He also admitted that he did not have a permit to carry a firearm, and that he was on federal "probation" (*i.e.*, supervised release) for a prior firearms offense. Cunningham claimed that when he entered the store, there was no gun in or on the wheelchair. Matthes then lifted the seat cushion in the wheelchair and seized a revolver from the seat area.

Cunningham was allowed to transfer from the motorized cart back to his personal wheelchair, and he then moved to a security office in the store. Officers placed Cunningham under arrest and searched his person incident to arrest. In Cunningham's undergarment, officers found a blue latex glove containing thirteen individually-wrapped bags of cocaine, six containing cocaine base and seven containing powder cocaine.

Cunningham moved to suppress the firearm seized from the wheelchair. He also sought to exclude the drugs seized from his person, and any statements that he made after the discovery of the firearm, on the ground that the additional evidence was the fruit of an earlier unlawful search.

The district court ruled that Officer Matthes did not violate Cunningham's rights under the Fourth Amendment by searching the wheelchair and seizing the firearm. The court thus denied the motion to suppress the firearm and rejected Cunningham's claim that later evidence-gathering was the fruit of an unlawful search and seizure.

Cunningham also moved to dismiss the charge in the indictment that he unlawfully possessed a firearm as a convicted felon. He argued that the statutory prohibition of 18 U.S.C. § 922(g)(1) infringed on his right to keep and bear arms under the Second Amendment. The district court rejected Cunningham's argument because his circumstances did not distinguish him from those of persons who were historically barred from possessing firearms.

The case proceeded to trial, and a jury convicted Cunningham on all counts. The district court denied Cunningham's motion for judgment of acquittal, and sentenced him to a total term of eighty-seven months' imprisonment, followed by five years of supervised release.

II.

Cunningham first argues that the district court erred in denying his motion to suppress evidence. He contends Officer Matthes's lifting of the seat cushion on his wheelchair, one of his "effects," constituted "a physical intrusion on a constitutionally protected area." *See United States v. Jones*, 565 U.S. 400, 406 n.3 (2012).

We conclude, however, that the officer's action was permissible under the Fourth Amendment on at least two bases: as an investigative search based on reasonable suspicion of crime and danger, *see Terry v. Ohio*, 392 U.S. 1, 22-24 (1968), and as a search for evidence based on probable cause under exigent circumstances, *see United States v. Antwine*, 873 F.2d 1144, 1147 (8th Cir. 1989). Matthes received reliable information from Walmart employees that a firearm was located in the seat of the wheelchair belonging to Cunningham. Although Cunningham denied that he placed a gun in the wheelchair, Matthes had substantial reason under the circumstances to disbelieve the denial and to conclude that Cunningham was responsible for effects within the wheelchair that he brought into the store. Cunningham's statements established probable cause that he was not permitted to possess a firearm. Matthes also confronted an exigency with a reported firearm in a public location that was readily accessible to customers moving through the Walmart store. The district court properly denied Cunningham's motion to suppress.

Cunningham next challenges the district court's denial of his motion to dismiss the charge that he unlawfully possessed a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Cunningham asserts that the Second Amendment guaranteed his right to possess a firearm, despite his status as a twice-convicted felon, because neither of his prior offenses qualified as a "violent" offense based on the elements of the crime. This contention is foreclosed by *United States v. Jackson*, No. 22-2870, 2024 WL 3711155, at *4 (8th Cir. Aug. 8, 2024), where we concluded that

there is no need for felony-by-felony determinations regarding the constitutionality of § 922(g)(1) as applied to a particular defendant. The longstanding prohibition on possession of firearms by felons is constitutional, and the district court properly denied the motion to dismiss. *See District of Columbia v. Heller*, 554 U.S. 570, 626 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2156 (2022); *id.* at 2157 (Alito, J., concurring); *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.); *id.* at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.); *Rahimi*, 141 S. Ct. at 1901 (explaining that "we do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse, see *Heller*, 554 U.S. at 626.").

Cunningham also contends that there was insufficient evidence to support his convictions. We consider the evidence in the light most favorable to the verdict, and uphold a conviction if any rational jury could have found the elements beyond a reasonable doubt. *United States v. Two Hearts*, 32 F.4th 659, 662 (8th Cir. 2022).

On the conviction for unlawful possession of a firearm, Cunningham argues that the evidence was insufficient to prove that he knew about the gun in the wheelchair or that he knowingly possessed it. He posits that another person could have placed the firearm under the seat cushion of his wheelchair while it was left unattended near the entrance of the Walmart store.

We agree with the district court that a rational jury could have found that Cunningham acted with the requisite knowledge. Cunningham admitted that the wheelchair belonged to him, and that he was the only person to use it. Cunningham parked the wheelchair near the entrance of the store, and a Walmart employee testified that she did not see anyone else near the wheelchair. Only a short amount of time passed between Cunningham's transfer out of the wheelchair and discovery

of the firearm in the wheelchair. There was no evidence suggesting why a patron of the store would wish to place a firearm in Cunningham's wheelchair. Cunningham, by contrast, was found in possession of a quantity of drugs suitable for distribution, and had a motive to possess a gun to protect his supply of cocaine. There was ample evidence to support the jury's finding that Cunningham knowingly possessed the firearm.

On the conviction for possession with intent to distribute cocaine, Cunningham argues that he was merely a drug user, and that there was insufficient evidence to show that he intended to distribute. The combination of circumstantial evidence and expert testimony, however, was sufficient to support a finding of intent to distribute. Cunningham was found with thirteen separate packages of drugs, totaling 3.44 grams of cocaine base and 4.46 grams of powder cocaine. The government's expert testified that the packaging and quantity were consistent with intent to distribute, because drug users rarely can afford more than one or two bags of drugs at a time, and will seldom possess more than a gram of cocaine or cocaine base. She also explained that drug users typically possess only their drug of choice, so the fact that Cunningham possessed two different types of cocaine indicated an intent to distribute. Cunningham's possession of a firearm, a tool of the drug trade, also suggested that he was a distributor. Despite Cunningham's contention that he was a drug user, police found no drug paraphernalia to facilitate drug use on his person or in his wheelchair. Although the government did not present even more evidence of drug trafficking, such as a large quantity of cash or communications with drug customers, a rational jury could have found that the evidence of record established that Cunningham intended to distribute the drugs found in his undergarment.

Finally, Cunningham briefly argues that there was insufficient evidence that he possessed the firearm in furtherance of a drug trafficking offense, because the firearm was under a seat cushion and "not particularly accessible" to him. To the contrary, a rational jury could have found that the firearm was placed strategically in

a location where it was hidden from view but readily accessible to one who was seated in the wheelchair and carrying drugs in his undergarment.

The judgment of the district court is affirmed. The appellant's motion to file a supplemental brief is denied.

STRAS, Circuit Judge, dissenting.

I dissent. More to come . . . again. *See United States v. Jackson*, — F.4th —, 2024 WL 3711155 (8th Cir. Aug. 8, 2024); *see also United States v. Jackson*, 85 F.4th 468, 468 (8th Cir. 2023) (Stras, J., dissenting from denial of reh'g en banc); *United States v. Cunningham*, 70 F.4th 502, 507 (8th Cir. 2023) (Stras, J., dissenting), *vacated*, — S. Ct. —, 2024 WL 3259687 (July 2, 2024).

_____